24431. KISER & COMPANY *v.* DOYAL *et al.*

DECIDED MARCH 26, 1935.

*D. J. Gantt, Ernest Watts,* for plaintiff.

*M. J. Yeomans, attorney-general, B. D. Murphy* and *J. T. Goree, assistant attorneys-general,* for defendants.

GUERRY, J. M. C. Kiser & Co. brought suit against P. H. Doyal, W. B. Harrison, and R. E. Matheson, as members of the State revenue commission, for the recovery of certain taxes paid by the plaintiffs, under the provisions of the gross-receipts tax act approved August 29, 1929 (Ga. L. 1929, p. 103), covering the years 1929, 1930, and 1931, alleging that, acting under instructions furnished to them by the State tax commissioner, they made returns on gross sales, including interstate business. An itemized statement attached to the petition showed the amount of interstate sales included in the returns so made, and taxes paid thereon, amounting to $544. It was further alleged that these taxes were paid without protest, at the time of the rendition of the return, and that no notice of assessment or reassessment was ever sent to the plaintiffs by the State tax commissioner, and that such taxes on interstate shipments were improperly collected, under the decision of this court in *American Mills Co.* v. *Doyal,* 46 *Ga. App.* 236. Judgment was prayed for the sum so paid.

A general demurrer to this petition was sustained and the plaintiffs excepted.

It is urged that the general policy of this State with reference to taxes is embodied in the Code of 1933, § 20-1007, which is as follows: "Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." The act under which this tax was collected provides for the collection of a certain per cent. on gross sales. Under the decision cited above, the plaintiffs in this case could not legally be compelled to pay this tax on business transacted outside this State, where orders therefor were mailed to the plaintiffs and filled from their warehouses located in this State. Such a tax so paid might be recovered by the taxpayer, and the principle of section 4317 does not apply. The question to be decided in this case is whether the plaintiffs pursued a proper remedy given by the act.

Section 13 of the act referred to provides that "if the taxpayer shall make any error in computing the tax assessable against him, the State tax commissioner shall correct such error or reassess the proper amount of taxes, and notify the taxpayer" by mailing to him a notice, etc. Section 14 gives to the commissioner the right to examine the records of the taxpayer, for verification or checking. Section 15 gives the right to the commissioner to make an examination and assessment on failure of the taxpayer to make a return. Section 17 provides: "If any person having made the return and paid the tax as provided by this act shall feel aggrieved by any assessment or reassessment made against him, . . he may apply . . to the State tax board . . within thirty days after the *notice* is mailed him, . . for a hearing upon and a correction of the amount of said tax so assessed or reassessed against him. . . The State tax board shall promptly consider said petition and grant or deny such hearing." If denied, the petitioner shall be notified; if granted, the petitioner shall be notified of the time and place of hearing. After the hearing the State tax board shall make its order and furnish a copy to the petitioner. It is then provided that "Any taxpayer who shall be dissatisfied with any order of the State tax board may, within thirty days after the rendition of such order, file his bill of complaint in the superior court of the county in which the tax accrued, . . and such superior court shall hear and determine such matter as causes in chancery are heard and determined." If this were all that was said it can not be questioned that the filing of a complaint with the State tax board was a condition precedent to the bringing of an action in the superior court. Immediately following the language above set forth we find the following: "Any person improperly charged with any tax and required to pay the same may recover the amount paid, together with interest at the rate of 6% per annum, *in any proper action* or suit against the State tax commissioner, and the superior court of the county where the tax accrued shall have *original* jurisdiction of any action to recover any tax improperly collected. It shall not be necessary for the taxpayer to protest against the payment of the tax or to make any demand to have the same refunded, in order to maintain such suit."

We are aware of the fundamental rule in the construction of statutes, that they must be construed in their entirety. 59 C. J.

993. It is also the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. "Conflicting intentions in the same statute are never supposed or so regarded, unless forced on the court by unambiguous language." 59 C. J. 999. It is also true that general and special provisions in a statute should stand together, if possible, but where general terms or expressions in one part of a statute are inconsistent with more specific terms or particular provisions in another part, the particular provision must govern. It is contended in the brief of able counsel for the defendant in error that statutes should be construed, if possible, to harmonize with the general policy of the law, and that the general policy of the law in this particular is embodied in the Civil Code (1910), § 4317. There is a clear intent in the act to allow for a refund of taxes improperly charged, and this is true whether protest is made or not made, and whether demand for refund is made. The act gives to the State tax board the authority to give relief to any person "who feels himself aggrieved by any assessment or reassessment," made by such commission, with the right of the taxpayer to complain in the superior court of such ruling of said board if unfavorable to him. This appeal to the State tax board is not the sole and exclusive remedy. A direct suit in the superior court may be brought against the State tax commissioner, now the State revenue commission. A taxpayer improperly charged with a tax under this act and required to pay the same may recover the same in any proper action or suit against the State revenue commission in the superior court of the county in which the taxes accrued, irrespective of protest or demand made for refund. If the tax has been improperly charged by the State tax commissioner, the taxpayer has no option except to pay it and then protest. This he may do by appealing to the State tax board, and asking that they correct the alleged improper charge. An appeal to the superior court may be taken from the ruling of the board; or he may enter suit directly against the commission, without making a protest or demanding a refund. The legislative intent is, as we construe it, to give to the taxpayer the option of either asking in the first place the State tax board to correct the alleged error, and, in the event of a refusal, of excepting in 30 days, by filing a bill in the superior court, or of bringing suit directly as suggested above. The reme-

dies are cumulative, and the one not exclusive of the other. The court therefore erred in sustaining the demurrer.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*